counsel in Scarlett v. Barr. Thank you, Ms. Barlett. Go ahead. Good afternoon, Your Honors. May it please the Court, my name is Hannah Miller and I represent Petitioner Leston Scarlett. The principal issue before this Court is whether the Board of Immigration Appeals improperly determined that Mr. Scarlett had not shown that the Jamaican government was unwilling or unable to control the gangs who persecuted him. This Court and others have consistently vacated decisions of the Board when it relied on insignificant or ineffective actions by a government to support a finding of ability or willingness. The two government actions that the Board cited are exactly that. By seizing on just those two facts, the Board, without considering all of the material evidence in the record, the Board misapplied the unable or unwilling standard and totally overlooked critical evidence in the record. The facts underlying Mr. Scarlett's withholding claim are undisputed. Mr. Scarlett was a police officer in Jamaica who experienced continued persistent death warnings. On one occasion, they drove by his house and shot at him. And when Mr. Scarlett went to the police, the police superintendent expressly told him that they had no resources to help him. He was then transferred to another station just four miles away. And after that transfer, Mr. Scarlett received a phone call in which an officer told him that the gang members were on their way to his daughter's primary school to kidnap her. In that same call, the officer also advised Mr. Scarlett not to return home because the gangs were planning to shoot up his house and set it on fire. Yet in the face of those imminent threats, the police did nothing. They did not dispatch any officers to the school, notify the school. They did not take a police report. In fact, Mr. Scarlett had to enter the incident into the station diary himself because no entry had been made. And from that point on, Mr. Scarlett was forced to keep his children out of school and stayed with friends and family because he could not return to his home until he was able to leave the country several months later. And Mr. Scarlett's experience is not surprising given the country condition evidence in the record and other evidence in Mr. Scarlett's testimony evidencing the country conditions at the time. The country condition evidence shows that the gangs in the Kingston area and throughout Jamaica had surpassed the control of the government and often worked in conjunction with the police and politicians. But the group, the social group that you're saying your client belongs to is not just Jamaicans who are, um, the sub, who have been, who've experienced gang violence. It's police officers who are targeted by gangs because they have themselves shot gang members. Am I right that that's the narrow definition? No Your Honor. There are two bases for nexus here. One is imputed political opinion. So these were political gangs who were targeting Mr. Scarlett because they believed him to be a member of the PNP and these gangs were affiliated with the JLP, the other dominant political party which was in power at the time. Another one of Mr. Scarlett's bases for nexus is that he was a police officer. But the board didn't reach that issue and so, and denied Mr. Scarlett's withholding claim on the sole basis that the Jamaican government was unwilling or unable to control the gangs. So that would be an issue for the board to address on remand, but it's not before, the nexus issue is not before the court. So despite all of the, uh, the persistent threats and the absence of any police response, the boards determined that Mr. Scarlett had not met his burden to show that the government was unwilling or unable to protect him. Do you agree that if we were to remand, the standard that the board should be applying is that articulated by the Attorney General in matter of AB, which was of course decided after all the litigation in this case had happened before the agency? No, Your Honor. Well, on remand, it's, the government here concedes that the, that matter of AB did not change the standard. Uh, and the long, the unable or unwilling to control standard is long standing. Well, you don't think it changed the standard either, but both of you think that it supports your, um, your position now, right? That's why I'm asking, um, to the extent the Attorney General wrote in an effort to clarify all of this, if not to change it, um, would a remand order from this court appropriately say that it's to be reconsidered in light of the standards articulated by the Attorney General in matter of AB? No, Your Honor. In light of the fact that the government here concedes that matter of AB did not change the standard, the, the matter of AB should be read consistently with this court's precedent. And so, for instance, in Aliev, this court has held that, that small, insignificant or ineffective actions by a government are insufficient, uh, to rely on. And so, to the extent, I guess, to the extent the, the remand instruction does include any, uh, consideration of matter of AB, it must be read consistently with this court's precedent. I thought it was the other way around, that where the Attorney General or, or an agency head is entrusted with resolving ambiguities in a statute, that once they resolve them, that it's the courts that are obligated to defer to that, not the other way around. Well, here, it's our position that there was no ambiguity in the statute, and so this court should. The courts have constantly recognized that there's ambiguity in the social group, um, aspect of, of, uh, this kind of persecution claim. Well, this matter of AB was about a social group, but the, this, this issue here is about the unwilling or unable aspect. That's the third requirement for a social group when it's by, when it's by a third party who's, who's the persecutor. Right. But here, the, the board didn't address the nexus issue, it only addressed the unwilling or unable. But isn't that exactly what it would have to do on a remand? It would have to, first of all, find that your client, to the extent he's claiming social group, fits within the, the Attorney General's definition of that. It would then have to prove that he's persecuted on account of that, and then, because the parties have to show that the government is unwilling and unable to do, to deal with this or unable. Yes, Your Honor. But again, if... And all three of those are addressed by the Attorney General, so I'm, I'm a little perplexed as to why you don't think that's exactly what we would be telling him to, the, um, agency to do is, you've now got guidance from the Attorney General, follow it. Well, the, the Attorney General, the, for the primary holding of the Attorney General did have to do with social group. But the, and the, the discussion of unwilling or unable is dicta. And here, Mr. Scarlett, as I, as I mentioned earlier, is not only claiming a nexus on the basis of social group, but also on the basis of imputed political opinion because of his perceived affiliation with the PNP. I'm sorry, I don't understand why you say it's dicta. The, the Attorney General in Part C says, the Board erred when it overruled the immigration judge's finding that the respondent failed to demonstrate that the government of El Salvador was unable or unwilling to protect her from her ex-husband, and then it proceeds to explain the error. Why do you think that's dictum? Because the main holding of matter of AB was to overturn ARCG, and so it went on to discuss the unwilling or unable standard, but that, but the, uh, but it was not the primary holding of the, the case. Let me, but to, to go back to, uh, Judge Raji's, uh, question, uh, let me, let me ask it in a slightly different way. There isn't any doubt, is there, that, uh, matter of AB, uh, states the relevant law. Is that right? That's not correct. Not correct? Well, matter of AB applies the unwilling or unable standard, but, uh, articulates, uses language that appears to elevate the standard. It's... Well, that may be, that may be, let's assume for the argument that's the case, um, nevertheless, it's the authoritative statement on the law by the relevant agency head, right? Yes, but to the extent it changes the standard, it is not entitled to deference under Chevron for the reasons that we explained. Well, for one, for one, it was the government, step zero of Chevron requires the, that the government recognize that it's changing the standard, and here the government, in fact, argues that it was not a change of the standard. In addition, there was no reasoned explanation for the change. Whatever it is, that's the law, right? That's the applicable law. Well, not to the extent this Court does not afford it deference. And why shouldn't we afford it deference? Again, because the, because there was no reasoned explanation. There was, it's not, it was not a reasonable change in the standard. The government doesn't even recognize that it was a change in the standard. The Court in Grace v. Whitaker determined that it should be not, it should not be afforded deference for those reasons. Let's not back around. Sotomayor, the phrase you're concerned with is the Attorney General's citation to the Seventh Circuit's finding or statement that you have to show that the government condoned the private action, now quoting the Seventh Circuit, or at least demonstrated a complete helplessness to protect the victims. Now, why isn't that a clarification by the Attorney General of what it means to be unable to control the third-party persecutor? Well, even to the extent it is a clarification, we, that standard is met here. The police here did nothing. But that's, that is a, that gets beyond the question we've been asking you, which is do we tell the agency on remand, you have the guidance of AB, follow it. Now, you may argue that that one statement hardly approves trivial or nonexistent benefits. I understand that. But when we remand, it's, you know, ideal if we provide some guidance. And I'm wondering if the guidance here is to say to them, you have a decision by the Attorney General since you last ruled on this question, follow it. I think that the, well, first of all, whether the, that language on its face, I don't think is the same as unwilling or unable. And it's not consistent with the way this Court has applied that standard. The Seventh Circuit thinks so. Well, even Judge Post. They ruled on that in 2000. And the Attorney General, contrary to your statement that he doesn't explain it, says that the fact that the local police have not acted on a particular report does not necessarily mean that the government is unwilling or unable to control any more than it would in the United States. There may be some reasons why a particular crime is not successfully investigated and prosecuted. In other words, look into the circumstances more. Why wouldn't that be the appropriate standard? Perhaps it would. And even under that standard, again, the facts here clearly demonstrate both complete helplessness and unwillingness. How would you be hurt by a remand? We're asking for a remand. You are. We are. We're asking for a remand. But we are asking for a remand, but not under the, but without giving deference to matter of AB. We don't believe that AB should be afforded deference for the reasons I mentioned earlier. I see my time is up. Because it's wrong, because it's dictum. Why doesn't the Attorney General get the deference that the precedent otherwise suggests he's entitled to as the head of the agency administering the statute? Because the unwilling or unable standard was incorporated into the statute, and there's no ambiguity there. It's a long-established standard. And so to change it without any reason or reasoning, or, sorry, reasonable explanation does not entitle it to Chevron deference. And again, the government here concedes that it was not a change of the standard. Is the government unable to provide protection to people living in parts of Chicago? I mean, this is the problem with the unable standard, is what are its limits? And one might think that AB is an attempt to provide some guidance on that. And so, I mean, if you don't think it's AB, what are the limits on the unable to protect prong of the standard? Well, I think here, this case doesn't require the court to establish the limits, because the facts are so far below any reasonable threshold, any, they don't even approach what would be the minimum level of a police response that would be required. There was no police report, no investigation. This isn't a case where there was an investigation that wasn't successful. This is a case where there was never any investigation at all. All the police did was notify Mr. Scarlett of this impending kidnapping threat and that the gangs were on their way to shoot up his house and set it on fire. They did nothing. So, and to the extent the court ---- Sotomayor, ten years ago, and there is at least some question open, which is a point the Attorney General considers relevant, as to whether if he were to relocate, he would not face, so with the passage of time and relocation, does he really face this threat? He's now separated from his family, so that, separated from them here in the United States. So that doesn't seem to be, to be an issue anymore. Well, the question here was specifically related to past persecution, which only gives rise to a rebuttable presumption of future persecution. So on remand, the government could conceivably argue that there are going to change circumstances, but that's not, that's not an issue here. I see my time is long up, so I'll reserve. No, thank you very much. I gave you some extra time, and you've reserved two minutes. Ms. Murphy? Good afternoon, Your Honors. Lindsay Murphy on behalf of the Attorney General. Your Honors, the Court reviews the agency's decision to deny protection from removal on a substantial evidence standard. Here, the evidence indicates that the Jamaican government did take measures to protect the petitioner from harm, and also took measures. What measures did they take after they shot up his home, after the gangs shot up his home? Oh, well, each time that gang members visited the petitioner's home, he called the police. Police did respond. It's unclear from the record whether any other actions were taken, but I believe the petitioner did indicate that they did not investigate. Right. So on that record, how is that, how is that sufficient? Well, it's, it, it, this is a case-by-case determination, and here, as the Attorney General said in a, in matter of AB, not every case is going to be investigated. Not, in not every case is there going to be a prosecution, but that doesn't necessarily. I understand that if they kept driving cars back and forth in front of his home and nothing ever happened, but this was a shooting up of the home. And the police themselves reported a threat to kidnap a young child. So those would seem to be the kinds of actions that required more than just a warning or coming to the scene. And, you know, whether the police are unwilling to, to provide protection may be a function of how much protection would reasonably be expected. And I don't disagree with you, Your Honor, but I think here, you know, the record doesn't necessarily provide a full picture of what the police did. For example, with respect to the warning about the kidnapping of the petitioner's child at school, he indicated that he was informed by the intelligence branch of the police force. And so, so we don't know, but it could very well be that there was a larger operation at play that the police did not want to undermine in, in responding directly to the school, for example. It's just that the record does not bear out the full picture of, of what happened on the police. Don't we have to evaluate this on the record that we have? We don't speculate as to possible other operations. We don't speculate, Your Honor, but it is the petitioner's burden to establish that the, that the police, that the Jamaican government were unwilling and unable to control the, the, the alleged persecutors in this case. And the agency evaluated the evidence. It considered the evidence of, of a lack of apparent response by the police, but also in conjunction with other evidence of, of country reports showing that there was a large operation targeting this specific gang in Jamaica during those six months that the petitioner was in hiding and during that time that he received these gang threats. So it's, it's not at all clear that the police were doing nothing. They just may have been acting on a much larger scale. Now, Ms. Murphy, in response to questions put to Ms. Miller, we were concerned about the proper role of this court in dealing with this case, are we, can the court of appeals address the issue of particular social group directly in a, in a presidential opinion, or do we need to remand that determined in the first instance? Your Honor, I would request that the court remand to consider a particular social group for the board to address in the first instance, since they had assumed that the petitioner had met that requirement and instead rested its, the board rested its decision on the unwilling or unable to control aspect. So I understand that your adversary wants a remand. So do you agree that that's what should happen in this case? It should be remanded? Well, if, if the court, if the court deemed the resolution of the particular social group issue necessary or dispositive of this case, then yes, it should be remanded. And additionally, on the unwilling and unable standard, the board has not set forth a bright line rule for what that standard is. All we have to, to glean from our board decisions and circuit court decisions to kind of determine what that standard is. We now have the attorney general's decision in matter of AB. Yes, we have that. And the board did not have the benefit of that decision because it was issued after the board's most recent decision in this case. So if the court. We do have the benefit of that opinion. Yes. But, but because the board is delegated with the authority to apply this law in the first instance, we encourage the court to remand for consideration of AB. Go ahead. So just to reiterate, the police did adequately respond to the petitioner's request for help, transferring him to different police stations during the final transfer transfer, during which he had received a threat about kidnapping his daughter. The petitioner remained in the country for the following six months without any direct threats to himself or his family. He remained working as a police officer and going to police every day at the police station that he had been transferred to just four miles away from where he was receiving the threats at his home and nothing happened to him. Petitioner says he and his family were living in hiding. Is that your own view of it? Or do you have a different view of the evidence? I, I understand, I understand that his, that they were living maybe with friends or relatives and that his children were not attending school, but that he was going to work every day, um, as a police officer until he, he left the country in June or July. The conclusion we should draw from that is what? Is that, is that the, the response that his supervisors provided, um, to these threats, which was to transfer him away from the, the area of harm where he was experiencing the threats actually helped him. Um, and so it showed that they were not unable to protect him from harm. And presumably that the BIA properly addressed his claim that the police told them they didn't have the resources to help him. Yes. And while his supervisor did tell him that he didn't have the resources, um, you know, that could be understood as he didn't have the resources in that station, in that district, but moving him to another area would be helpful. And how do we factor into that, the, the, um, keeping his children from school? Um, that's, that's a tough one, Your Honor. Um, and I think to the extent that, um, you conclude that the board did not adequately consider that aspect of the petitioner's claim, then we would encourage you to remand, um, for consideration, particularly in light of the clarification that the Attorney General has issued in matter of AB. Is it affected at all by the fact that he's, if I understand the record correctly, he's no longer, um, responsible for his children or at least they're not living with him? Um, it, it may be in, in terms of his, his prospective claim. Um, but if the court were to consider that in relation to his claim of, of past persecution, um, then he would, he would benefit from a credible presumption of future harm and persecution. Thank you. Ms. Miller is reserved a couple of minutes. I just want to address a couple of points. Uh, first, I just want to mention that the BIA actually misstates the point about the, uh, the fact that the police supervisor expressly told Mr. Scarlett that there were no resources. The board actually says that Mr. Scarlett claims that there were no resources as if it's his opinion when in fact, he credibly testified that the police superintendent told him that. Uh, I also want to mention that, uh, that this is not a, uh, an exclusively particular social group case. As I mentioned earlier, this, uh, the, the targeting here was on account of an imputed political opinion. So again... That, that's somewhat surprising. What's the evidence to support that? I mean, I had thought your stronger claim was the, um, social group. So maybe I need to have it explained to me. There's lots of evidence in the record and, uh, that when, when the drive by shootings occurred, uh, these political gangs were affiliated with the JLP, were shouting things like PNP boy, P, uh, names associated with the rival political party, uh, and that they believed him to be a member of that rival political party in part, because he had been transferred from another location where that party was more dominant. Is that a mistaken belief? Yes. That was a mistaken belief. That's probably what I got confused on. Okay. Uh, I also want to point out that the government raises some hypothetical scenarios that are clearly not in the record and that's pure speculation. And in fact, Mr. This is a unique case because Mr. Scarlett was himself a police officer and therefore had unique firsthand knowledge of exactly what the police were or were not doing. Uh, and so in this case, he knew that there was no investigation and that they had not taken any action in response to the threats against him. Uh, in response to the government's argument that there had been this large operation to arrest a major gang leader at the time, uh, that is true. But even that happened only after the United States has had issued an extradition order against that gang leader. And in fact, the prime minister of Jamaica had hired a lobbying firm to extradition request and for months refused to even initiate efforts to request or to arrest the gang leader. Uh, and only after extreme pressure from the United States did efforts to arrest him begin. Moreover, even after that arrest, there's evidence in the record that the gangs were active and continue to remain active despite that one arrest. So, and finally, the board didn't even cite that fact. Uh, so it's not something that the board relied on here as a basis for its conclusion. Thanks very much. We'll reserve decision and we thank you both for arguments. Well done.